UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,
    *Plaintiff(s)*,

v.

MAHESH PATEL,
ROBERT HARVEY,
HARPREET WASAN,
STEVEN HOUGHTALING,
TOM EDWARDS, and
GARY PRUS,
    *Defendant(s).*

No. 3:21-cr-220 (VAB)

**RULING AND ORDER ON MOTIONS**

Mahesh Patel ("Mr. Patel"), Robert Harvey ("Mr. Harvey"), Harpreet Wasan ("Mr. Wasan"), Steven Houghtaling ("Mr. Houghtaling"), Tom Edwards ("Mr. Edwards"), and Gary Prus ("Mr. Prus") (collectively, "Defendants") have been charged in a one-count indictment with conspiracy in restraint of trade in violation of 15 U.S.C. § 1 (the "Sherman Act"). *See* Indictment, ECF No. 20 (Dec. 15, 2021) ("Indictment").

Defendants have filed a joint motion to dismiss the indictment, *see* Defs. Joint Mot. to Dismiss the Indictment, ECF No. 174 (June 29, 2022) ("Mot. to Dismiss"), a joint motion for bill of particulars, *see* Defs. Joint Mot. for a Bill of Particulars, ECF No. 150 (Apr. 5, 2022) ("Mot. for Bill of Particulars"), and a joint motion for disclosure of the grand jury minutes, *see* Defs. Joint Mot. for Discl. of Grand Jury Mins., ECF No. 171 (June 29, 2022) ("Mot. for Discl.").

For the following reasons, the joint motion for disclosure of grand jury minutes is **GRANTED in part**. The Court will conduct *in camera* review of the grand jury instructions to

1

determine if disclosure is necessary. The Government is instructed to provide the necessary material to the Court for *in camera* review by **October 28, 2022**.

The joint motion for bill of particulars is **DENIED without prejudice** to renewal following the parties' joint submission of a proposed scheduling order in this case.[1]

I.   FACTUAL AND PROCEDURAL BACKGROUND

   A. Factual Allegations

Company A was allegedly a wholly owned subsidiary of a parent corporation that was incorporated in Delaware and had a principal place of business in East Hartford, Connecticut. Indictment ¶ 1. Company A was allegedly an aerospace engine design, manufacturing, and service company and relies on different sources of labor, including through its own employees, contract employees, and outsource engineering. *Id.* ¶ 2.

Companies B through F were allegedly businesses incorporated in various places throughout the United States, such as Florida, California, and Ohio, and with principal places of business in Connecticut and Florida. *Id.* ¶¶ 5–9.

Mr. Patel was allegedly the Manager and then Director of a Company A unit and was allegedly responsible for managing the relationships between Company A and its suppliers. *Id.* ¶ 10.  Mr. Patel was allegedly the highest-ranking employee in his unit and Mr. Patel and his employees frequently communication with suppliers, controlled the statements of work and payments, and monitored the quality of supplier work. *Id.*

Mr. Harvey was allegedly the President-Global Business Head of Company B. *Id.* ¶ 11.

Mr. Wasan was allegedly Company B's Vice President and Strategic Client Partner. *Id.* ¶ 12.

---

[1] The pending motion to dismiss the indictment, ECF No. 174, remains under advisement.

Mr. Houghtaling was allegedly the Senior Vice President of Company C. *Id.* ¶ 13.

Mr. Edwards was allegedly the President of Company D's North American operations. *Id.* ¶ 14.

Mr. Prus was allegedly the Chief Operating Officer, Executive Vice President, and part owner of Company E. *Id.* ¶ 15.

Mr. Harvey, Mr. Wasan, Mr. Houghtaling, Mr. Edwards, and Mr. Prus allegedly were responsible for maintaining and advancing their companies' business relationships with Company A, as well as hiring and recruiting at their companies. *Id.* ¶ 16. Each of these Defendants allegedly communicated with Mr. Patel about these issues. *Id.*

Engineers in the aerospace industry allegedly perform services such as electrical and mechanical engineering, design, testing, software development, supply chain management, and project management. *Id.* ¶ 1. At times, an outsource engineering supplier will allegedly contract with a customer to complete a particular project, assign engineers from its own workforce and then receive payment from the customer for that work. *Id.* ¶ 3. In this arrangement, the supplier is allegedly typically responsible for pay salary and providing benefits to its employees who worked on the outsourced projects, as well as recruiting and hiring employees needed to complete the supplier's outsourced projects. *Id.*

Here, Company A allegedly outsourced projects that used Companies B through F as suppliers. *Id.* ¶ 4. Company A and Companies B through F allegedly competed against one another to recruit and hire engineers and other skilled workers. *Id.* Companies B through F also allegedly competed with one another for outsource projects and allegedly did so based on price, among other things. *Id.*

Between 2011 and 2019, Defendants allegedly agreed to restrict hiring and recruiting engineers and other skilled-labor employees between and among Companies A through F in the United States. *Id.* Specifically, Defendants agreed to the following: 1) not hiring employees of Companies B through F and 2) not proactively contacting, interviewing, and recruiting applicants who were employed by another co-conspirator company. *Id.* ¶ 21.

Mr. Patel allegedly was the "primary enforcer" of the underlying agreement and was an intermediary for communications among co-conspirators. *Id.* ¶ 22. In December 2015, Mr. Patel allegedly attended a dinner with Mr. Edwards and Mr. Wasan and other representatives of Companies B, C, and D. *Id.*

On several occasions, Mr. Patel allegedly took steps to prevent or remedy violations of the alleged no-poach agreement. *Id.* For example, in February 2017, Mr. Wasan allegedly stated in an e-mail in response to Company C making an employment offer to a Company B engineer "[Company C] is not allowed to poach any of our employees . . . . I will send this to [Mr. Patel] today." *Id.* ¶ 22b. Mr. Wasan allegedly then sent the information about Company C's offer to Mr. Patel and stated that Mr. Wasan was "very concerned" and asked Mr. Patel if he could "please stop this person from being hired by [Company C]?" *Id.*

Additionally, as part of the alleged conspiracy, Mr. Patel, Mr. Harvey, and Mr. Wasan allegedly agreed that Company A would not hire or recruit engineers and other skilled labor employees from Company B at least until the engineer or other skilled labor employee had worked for Company B for an agreed upon period of time. *Id.* ¶ 23.

Defendants allegedly effectuated the agreement by refraining from hiring, contacting, interviewing, and recruiting engineers and other skilled labor workers employed by a co-conspirator company. *Id.* ¶ 25. For example, in September 2017, Mr. Patel allegedly sent an e-

4

mail to the Company A Vice President of Human Resources and directed the "HR team not to hire [Company B] outsource resources currently deployed on [Company A] projects till end of this year." *Id.* ¶ 25a. Additionally, in January 2017, allegedly a Company D executive sent an e-mail to Mr. Patel stating that Company E was "stealing our people" and naming a Company D employee who had been offered a job at Company E. *Id.* ¶ 25b. Mr. Patel allegedly contacted Mr. Prus about the issue and Mr. Prus contacted a Company E employee telling the employee "[p]lease make sure we stay away from [Company C], [Company D], [Company F] personnel moving forward." *Id.*

Defendants and their alleged co-conspirators allegedly rescinded employment offers that violated their agreement. *Id.* ¶ 26. Defendants allegedly discussed mutual financial benefits of the no-poach agreement, such as preventing wages and labor costs from rising. *Id.* ¶ 27.

To enforce the alleged agreement, Defendants allegedly investigated whether employees were applying for positions with or had received offers from another co-conspirator, alerting co-conspirators to violations of the alleged agreement, and threatening to reduce, withhold, and disrupt business transactions between Company A and the other co-conspirator companies if they did not conform to the agreement, among other things. *Id.* ¶ 28. Defendants also allegedly took steps to conceal the alleged conspiracy by keeping the agreement unwritten, holding meetings about the agreement in private, and providing false and misleading information to engineers and other skilled-labor employees about the existence of the agreement and the employees' ability to apply for jobs at the co-conspirator companies, among other steps. *Id.* ¶ 29.

### B.  Procedural History

On December 15, 2021, the Government indicted Mr. Harvey, Mr. Harvey, Mr. Wasan, Mr. Houghtaling, Mr. Edwards, and Mr. Prus in a sealed single-count indictment alleging conspiracy in restraint of trade in violation of the Sherman Act. *See* Indictment.

On December 16, 2021, the Government moved to unseal the case, *see* Mot. to Unseal Case, ECF No. 28 (Dec. 16, 2021), which the Court granted, *see* Order, ECF No. 29 (Dec. 16, 2021).

On December 27, 2021, the Government filed a notice regarding an agreement on initial discovery. *See* Notice, ECF No. 68 (Dec. 27, 2021).

On January 6, 2022, the Government filed a sealed motion to continue sealing, *see* ECF No. 85 (Jan. 6, 2022), which the Court granted, *see* Order, ECF No. 110 (Feb. 2, 2022).

On January 14, 2022, the parties filed a joint motion for protective order, *see* Joint Mot. for Protective Order, ECF No. 92 (Jan. 14, 2022), which the Court granted, *see* Order, ECF No. 94 (Jan. 17, 2022).

On February 1, 2022, the Government submitted a motion for alternative victim notification, *see* Mot. Alt. Victim Notification, ECF No. 107 (Feb. 1, 2022), which the Court granted on February 2, 2022, *see* Order, ECF No. 109 (Feb. 2, 2022).

On February 2, 2022, the Court held a scheduling conference by videoconference. *See* Min. Entry, ECF No. 111 (Feb. 2, 2022).

On February 8, 2022, the parties filed a joint motion to continue jury selection and for scheduling order. *See* Joint Mot. to Continue, ECF No. 117 (Feb. 8, 2022). The Court granted the motion on February 9, 2022, and scheduled jury selection to begin on March 27, 2023. *See*

Order, ECF No. 118 (Feb. 9, 2022). The Court also entered a scheduling order. *See* ECF No. 120 (Feb. 9, 2022).

On April 5, 2022, Defendants filed a joint motion for bill of particulars. *See* Mot. for Bill of Particulars. On April 26, 2022, the Government filed a memorandum in opposition to the joint motion for bill of particulars. *See* Mem. in Opp'n, ECF No. 154 (Apr. 26, 2022) ("Opp'n to Mot. for Bill of Particulars"). On May 10, 2022, Defendants filed a joint reply to the Government's opposition. *See* Reply to Resp., ECF No. 155 (May 10, 2022) ("Reply in Supp. of Mot. for Bill of Particulars").

On June 29, 2022, Defendants filed a joint motion for disclosure of grand jury minutes, as well as a join motion to seal the motion in part and Exhibits B-G to that motion. *See* Mot. for Discl; Joint Mot. to Seal, ECF No. 172 (June 29, 2022). The Court granted the joint motion to seal on June 30, 2022. *See* Order, ECF No. 175 (June 30, 2022).

On June 29, 2022, Defendants filed a joint motion to dismiss the indictment. *See* Mot. to Dismiss.

On July 7, 2022, the American Staffing Association ("ASA") and the National Association of Criminal Defense Lawyers ("NACDL") filed motions for leave to file an amicus brief in support of Defendants' motion to dismiss. *See* Mot. for Leave, ECF No. 178 (July 7, 2022); Mot. for Leave, ECF No. 187 (July 7, 2022) ("NACDL Amicus Br."). On July 8, 2022, the Court granted both motions for leave. *See* Order, ECF No. 190 (July 8, 2022). On July 8, 2022, ASA filed a notice enclosing its amicus brief. *See* Notice, ECF No. 196 (July 8, 2022) ("ASA Amicus Br.").

On August 3, 2022, the Society of Human Resource Management ("SHRM") filed a motion for leave to file an amicus brief in support of Defendants' motion to dismiss. *See* Mot. to

7

File Amicus Br., ECF No. 210 (Aug. 3, 2022). On August 4, 2022, the Court granted the motion. *See* Order, ECF No. 210 (Aug. 4, 2022). On August 4, 2022, SHRM filed a notice enclosing its amicus brief. *See* Notice, ECF No. 212 (Aug. 4, 2022) ("SHRM Amicus Br.").

On August 10, 2022, the Government filed a motion to seal its opposition to Defendants' joint motion for disclosure of grand jury minutes, as well as its sealed opposition to Defendants' joint motion for disclosure of grand jury minutes. *See* Mot. to Seal, ECF No. 214 (Aug. 10, 2022); Mem. Of Law in Opp'n to Defs. Joint Mot. for Discl. of Grand Jury Mins., ECF No. 215 (Aug. 10, 2022) ("Opp'n to Mot. for Discl."). On August 11, 2022, the Court granted the motion to seal. *See* Order, ECF No. 217 (Aug. 11, 2022).

Also, on August 10, 2022, the Government filed a memorandum in opposition to Defendants' motion to dismiss the indictment. *See* Mem. in Opp'n to Mot. to Dismiss, ECF No. 216 (Aug. 10, 2022) ("Opp'n to Mot. to Dismiss").

On August 31, 2022, Defendants filed a reply brief in support of the motion for disclosure of grand jury minutes and a reply brief in support of the motion to dismiss the indictment. *See* Reply to Resp. to Joint Mot. for Discl., ECF No. 227 (Aug. 31, 2022) ("Reply in Supp. of Mot. for Discl."); Reply to Resp. to Joint Mot. to Dismiss, ECF No. 227 (Aug. 31, 2022) ("Reply in Supp. of Mot. to Dismiss").

On Sept. 15, 2022, Defendants filed a motion to continue the motion hearing and scheduling conference. *See* Mot. to Continue, ECF No. 233 (Sept. 15, 2022). On September 19, 2022, the Court granted in part and denied in part the motion to continue and scheduled the motion hearing and scheduling conference for October 20, 2022. *See* Order, ECF No. 234 (Sept. 19, 2022).

On October 20, 2022, the Court held a motion hearing and scheduling conference at which the parties were given an opportunity to present arguments on the motions that are the subject of this Ruling and Order. *See* Min. Entry, ECF No. 241 (Oct. 20, 2022).

## II. STANDARD OF REVIEW

### A. Motion for Bill of Particulars

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars . . . before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted).

### B. Motion for Disclosure

"The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "[A] presumption of regularity attaches to grand jury proceedings." *United States v. Leung*, 40 F.3d 577, 581 (2d Cir.1994). Under Rule 6(e)(3)(E)(ii), Defendant must make a "showing of particularized need" to justify the disclosure. *See United States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980). "Grand jury proceedings are traditionally conducted in secret . . . [and] the burden is on the party seeking disclosure to show [that the]

9

'particularized need' . . . outweighs the need for secrecy." *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978).

### III. DISCUSSION

#### A. The Joint Motion for a Bill of Particulars

"A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotation marks and citation omitted). A bill of particulars is not necessary, however, "where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004). "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars." *United States v. Ferguson*, 478 F. Supp. 2d 220, 226 (D. Conn. 2007) (citing *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998)). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (citations omitted).

Defendants request two categories of information in their motion for a bill of particulars: 1) "the names of all alleged co-conspirators (companies and individuals) referenced in the Indictment, including individuals by and through whom the government alleges the companies acted" and 2) "the names of any employees allegedly targeted and/or affected by the alleged conspiracy." Mot. for Bill of Particulars at 2.

Defendants argue that without this information, the Government has not provided adequate notice of the scope of the conspiracy. *Id.* Defendants argue that the voluminous (700,000 plus page) discovery in this case, dozens of co-conspirators, nine-year alleged length of

10

the conspiracy, lack of conceivable danger to co-conspirators, and lack of harm to the Government demonstrate that a bill of particulars identifying the co-conspirators is warranted. *Id.* at 5–9. Additionally, Defendants argue that, for many of the same reasons, the Government should provide a list of the individuals allegedly impacted by the conspiracy. *Id.* at 9–12. Defendants emphasize that they had requested this information from the Government, but the Government only provided a limited answer and directed Defendants to review the discovery provided. *Id.*

The Government emphasizes that it has produced electronic, text-searchable documents in discovery, as well as indices describing the categories of documents and their corresponding Bates numbers. Opp'n to Mot. for Bill of Particulars at 3–4. The Government argues that requests such as Defendants are routinely denied in conspiracies and the older case law that Defendants rely on is less persuasive in light of developments in discovery, such as electronic, searchable documents. *Id.* at 6–7, 7 n.4. Additionally, the Government argues that the names of all unindicted co-conspirators are not necessary for Defendants to be on notice of the crime alleged in the Indictment because the Indictment is detailed and Defendants have access to the names of co-conspirators in the discovery already provided. *Id.* at 8–15. Finally, the Government argues Defendants have not demonstrated a need for the names of all individuals subject to or affected by the alleged conspiracy because the Indictment appropriately identifies the scope of the conspiracy and the Government, in a recent letter response to Defendants, defined what it meant by "other skilled-labor employees." *Id.* at 15–18.

In their reply, Defendants emphasize that the issue of notice is exacerbated in this case because the alleged start date of the conspiracy precedes the Government's 2016 guidance that publicly stated it would be prosecuting no-poach agreements criminally. Reply in Supp. of Mot.

11

for Bill of Particulars at 1. Defendants argue that the requested information is necessary to understanding the charged conduct because the conspiracy spans nine years and involves individuals at six different companies. *Id.* at 5. Additionally, Defendants argue that the volume of the Government's discovery weighs in favor of a bill of particulars, despite the fact that it is text searchable, because "nothing in the discovery can possibly identify who the government contends was a co-conspirator." *Id.* at 6. Defendants emphasize that knowing the "general outline of the alleged conspiracy" is not helpful because it is impossible to search the voluminous discovery for information related to "routing business functions such as hiring and recruiting." *Id.*

The Court disagrees.

A bill of particulars identifying unindicted co-conspirators can be ordered in cases where the Government provides voluminous examples of potentially legal or illegal conduct but fails to provide enough detail in the Indictment or elsewhere for the defendants to properly "prepare for trial" and "avoid surprise." *See United States v. Nachamie*, 91 F. Supp. 2d 565, 572–74 (S.D.N.Y. 2000). "While the sheer volume of discovery can be a basis for granting a motion for a bill of particulars, that need is obviated if there is sufficient time for the defendant to review the materials and when the Government has produced its discovery in an organized manner." *United States v. Rogas*, 547 F. Supp. 3d 357, 366 (S.D.N.Y. 2021) (citing *United States v. Wey*, No. 15-cr-311, 2017 WL 237651, at *21 (S.D.N.Y. Jan. 18, 2017) (collecting cases)).

Here, like in *Rogas*, the Government has provided the details of the Government's theory of the alleged conspiracy, such as the nature of the conspiracy, *see* Indictment ¶ 19 (describing it as a conspiracy "to suppress competition by allocating employees in the aerospace industry working on projects for Company A"), the means, *see id.* ¶¶ 20–28 (attending meetings,

12

discussing hiring restrictions, defining a leader, describing enforcement, noting benefits), the dates, including supplementing with more specific dates for certain Defendants, *see id.* ¶ 19, and details of conversations that depict the nature of the alleged agreement, *see id.* ¶¶ 20–29. Additionally, the Government "has produced discovery in an electronically searchable format and the productions have been accompanied by itemized indices with Bates ranges." *Rogas*, 547 F. Supp. 3d at 366 (internal quotation marks omitted).

While the alleged conspiracy involves six different companies and various individuals, the nature of the underlying agreement is not complex. The Indictment alleges an agreement to not hire the engineering or highly skilled employees of companies competing for projects with Company A. *See* Indictment ¶ 19. This is markedly different than more complex cases that require a bill of particulars, such as an insider trading conspiracy involving 31 stocks, dozens of co-conspirators, and seven separate conspiracies. *See United States v. Rajaratnam*, No. 09 Cr. 1184, 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (noting that the U.S. Attorney publicly described the case as "the largest hedge fund insider trading case in history").

Therefore, despite the novel nature of this case, the Government has provided a sufficiently detailed Indictment that, in conjunction with ample time before trial and electronically searchable discovery, addresses the issues Defendants raise in their briefing.

Accordingly, the Court will deny the motion for a bill of particulars without prejudice to renewal following the parties' joint submission of a proposed scheduling order in this case.

### B. The Joint Motion for Disclosure of the Grand Jury Minutes

"Grand jury proceedings are presumptively secret, and a defendant seeking the disclosure of grand jury materials bears a heavy burden." *United States v. Schlegal*, 687 F. App'x 26, 30 (2d Cir. 2017) (citing *In re Petition of Craig*, 131 F.3d 99, 104 (2d Cir. 1997)). "[T]he grand jury sits

not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge . . . . and to make the assessment it has always been thought sufficient to hear only the prosecutor's side. *United States v. Williams*, 504 U.S. 36, 51 (1992) (internal citations omitted). Therefore, "a defendant seeking disclosure of grand jury minutes has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations." *United States v. Forde*, 740 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (citing *Moten*, 582 F.2d at 662). "A party makes a showing of particularized need by proving [1] 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that their request is structured to cover only material so needed.'" *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

Defendants argue that the Government's changing positions regarding whether only some no poach agreements or all no poach agreements constitute naked horizontal market allocation such that they are subject to the *per se* rule is grounds for disclosure of the instructions given to the grand jury. *See* Mot. for Discl. at 10–14. Defendants argue that "the government's decision to charge the instant case as a *per se* violation" in combination with statements made in other cases, "suggests that it is likely that the government no longer views the facial existence of a collaborative business context in which an alleged no-poach agreement originates as exempting such agreement from criminal liability at the charging stage—thus underscoring the likelihood that the grand jury was mis-instructed." *Id.* at 14–15 (citing, for example, Tr. at 40:8–10, *United States v. DaVita*, No. 21-cr-00229-RBJ (D. Colo. Nov. 19, 2021) (government asserting that "a no-poach agreement, a no-hire agreement, however you want to put it, is a *per se* market allocation") and Gov't Opp'n to Defs.' Mot. to Dismiss at 12, *United States v. Hee*, No. 2:21-cr-

14

00098-RFB-BNW, ECF No. 47 (D. Nev. Oct. 1, 2021) (government asserting that "because no-poach restraints operate as a type of market division in employment markets, no-poach agreements among competitors are *per se* violations of the Sherman Act'")).

Additionally, Defendants argue that the Government's questioning of grand jury witnesses "demonstrate its misunderstanding of what it was obligated to present to establish probable cause that Defendants engaged in conduct that is *per se* unreasonable." *Id.* at 16–22; Reply in Supp. of Mot. for Discl. at 2. Finally, Defendants emphasize that the request for disclosure is limited to just the grand jury instructions, Mot. for Discl. at 23, and request that, at a minimum, the Court conduct an *in camera* review. Reply in Supp. of Mot. for Discl. at 10.

The Government responds that Defendants have not provided sufficient specificity to meet the "particularized need" standard. Opp'n to Mot. for Discl. at 8–11. The Government also argues that the statements that Defendants cite as inconsistent were simply taken out of context statements about the current state of the law on ancillary restraints. *Id.* at 7 (citing Opp'n to Mot. to Dismiss at 38–39). Additionally, the Government argues that it had no obligation to instruct the jury on ancillary restraints, which it considers a defense to the *per se* charge. *Id.* at 6–8. Finally, in the Government's view, the Defendants' arguments about certain lines of questioning during the grand jury proceedings are an "attempt to assert Defendants' trial defense" into the grand jury proceedings. *Id.* at 12–14. The Government requests that, should the Court decide to grant Defendants' relief, that the Court should order *in camera* review rather than full disclosure. *Id.* at 14 n.7.

The Court agrees in part and disagrees in part.

While "[t]he government need not provide the grand jury with legal instructions," *United States v. Hoey*, No. 11-cr-337 (PKC), 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) (citing

*United States v. Lopez–Lopez*, 282 F.3d 1, 9 (1st Cir.2002)), if the Government does provide legal instruction, it is error to do so incompletely or erroneously. *See United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990) ("[C]areless instructions, such as those given here, tend to hamper the grand jury's understanding of the importance of evaluating the reliability of the evidence and to discourage it from demanding eye witness testimony.").

"A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct," *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (citations omitted), *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010), and "[m]ere speculation that . . . the Government may have improperly instructed the grand jury . . . falls far short of the showing to overcome the presumption of secrecy," *Forde*, 740 F. Supp. 2d at 414 (citations omitted); *see also United States v. Kufrovich*, 997 F. Supp. 246, 253 (D. Conn. 1997) (rejecting a request to disclose grand jury minutes of the instructions where Defendants merely state it is "extremely likely" that the Government gave improper instructions because this fails to meet the particularized need standard).

Courts have requested to review grand jury instructions *in camera*, however, where the defendants put forth evidence that there was an intervening change in the law and that the Government had previously argued against it. *See, e.g.*, *Hoey*, 2014 WL 2998523, at *2 (finding the defendant had "come forward with more than mere speculation that the grand jury did not receive the proper instructions" where, after the grand jury returned an indictment, the Supreme Court issued a decision adopting a but-for standard that the Government had previously argued against because the new standard was "not merely an evolutionary development or incremental change, but is a requirement that is non-obvious to the reader from the face of the statute"); *see also United States v. Islam*, No. 20-cr-00045, 2021 WL 312681, at *1–2 (E.D. Pa. Jan. 29, 2021)

16

(granting *in camera* review of grand jury instructions where the applicable law was "in flux" and the alleged conduct "is the type of activity that has been carefully scrutinized by courts in determining the scope of criminal liability" as a factual matter, and would require the grand jury "to draw fine distinctions in deciding whether to indict").

Here, the Government has made public statements that it "intend[ed] to proceed criminally against naked wage-fixing or no-poaching agreements" but not agreements that are "reasonably necessary to a larger legitimate collaboration." Mot. for Discl. at 11. The Government also made arguments in *DaVita* and *Hee* to the effect that all "no-poach agreement[s] . . . [are] a *per se* market allocation." *Id.* at 15.

While the Government is not required to present evidence of Defendants' theory of defense, *see United States v. Romano*, 706 F.2d 370, 374 (2d Cir. 1983), it is required to present evidence sufficient to show a crime has been committed, *see Williams*, 504 U.S. at 51. And, because the Government elsewhere has suggested that not all no-poach agreements are market allocations if they could be "reasonably necessary to a larger legitimate collaboration," Mot. For Discl. at 11 ("If the no-poaching agreement is naked, that is, separate from or not reasonably necessary to a larger legitimate collaboration . . . . it is conduct that the Division will criminally investigate and may decide to criminally prosecute.") (citing to Dep't of Just. Antitrust Div., Fed. Trade Comm'n, *Antitrust Guidance for Human Resource Professionals* at 8), this case raises issues not normally present in criminal prosecutions.

As a result, in light of the "in flux" law concerning the criminality of no-poach agreements, the Government's general stance on no-poach agreements as well as specific statements in recent no-poach prosecutions, and the "fine distinctions" the grand jury needed to make "in deciding to indict," *see Islam*, 2021 WL 312681, at *1–2, Defendants have met the

17

particularized need standard for the narrow category of information they seek. The Court recognizes that grand jury proceedings are presumptively secret but, given the unique circumstances of this case as one of only five that have been prosecuted nationwide to date, this relief is unlikely to have the all-encompassing "chilling effect on the proper functioning of grand juries" that the Government insists will result. *See* Opp'n to Mot. for Discl. at 9.

Moreover, because the Court will review this material *in camera* to decide whether any of this material should be provided to Defendants, there may be no harm at all since the relevant portions of the grand jury proceedings may never be released to Defendants. *See Frederick v. New York City*, No. 11 Civ. 469 (JPO), 2012 WL 4947806, at *14 (S.D.N.Y. Oct. 11, 2022) ("[T]he Court concludes that it can best avoid possible injustice and protect grand jury secrecy by reviewing all of the grand jury minutes *in camera*. The context afforded by such review will assist the Court in determining the strength of interests in justice and secrecy, and will therefore ensure the proper vindication of both values.")

Accordingly, in order to preserve the secrecy inherent to ongoing grand jury proceedings, the Court will conduct an *in camera* review of the portions of the grand jury proceedings that include any instructions given.

## IV.    CONCLUSION

For the foregoing reasons, the joint motion for disclosure of grand jury minutes is **GRANTED in part**. The Court will conduct *in camera* review of the grand jury instructions to determine if disclosure is necessary. The Government is instructed to provide the necessary material to the Court for *in camera* review by **October 28, 2022**.

The joint motion for bill of particulars is **DENIED without prejudice** to renewal following the parties' joint submission of a proposed scheduling order in this case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of October, 2022.

                                                /s/ Victor A. Bolden
                                                VICTOR A. BOLDEN
                                                UNITED STATES DISTRICT JUDGE